BATCHELDER & LINCOLN CO. v. WHITMORE.

In re BATCHELDER & LINCOLN CO., Petitioner.

(Circuit Court of Appeals, First Circuit. April 23, 1903.)

Nos. 437, 443.

1. COMPOSITION WITH CREDITORS—SECRET PREFERENCE.

A secret arrangement, by which a creditor who joins with others in a composition receives a note of a third person from the debtor for a substantial amount to apply on his claim, and the same percentage as other creditors on the remainder, is fraudulent in law, whether the note was given to induce him to become a party to the composition or, under the circumstances, in consideration of his advancing money to enable the debtor to make the payments.

¶ 1. See Compositions with Creditors, vol. 10, Cent. Dig. § 87.

**2. SAME—EFFECT OF SECRET PREFERENCE—RIGHTS OF DEBTOR AND OTHER CREDITORS TO AVOID.**

A secret agreement between a debtor and a single creditor joining in a composition by which such creditor is to receive an advantage over the others, so long as it remains executory, cannot be enforced, and, if fully executed at the time of, or prior to, the composition, the excess may be recovered back on the theory that it was paid under compulsion; but such transactions render the composition only voidable at the instance of other creditors joining therein. They have no lien or other right which entitles them to recover the excess paid or secured to the preferred creditor.

**3. BANKRUPTCY—PREFERENCE—SECRET ADVANTAGE GIVEN IN COMPOSITION.**

A secret advantage given by a debtor to one creditor in a composition, made several years prior to the debtor's bankruptcy and before the passage of Bankr. Act 1898 (Act July 1, 1898, 30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3418]), is not a preference, within the meaning of such act.

**4. SAME—RIGHTS OF TRUSTEE.**

A trustee in bankruptcy represents only creditors who were such at the time of the filing of the petition, and he cannot assert rights as representative of creditors who were parties to a prior composition with the bankrupt which they have not sought to avoid.

**5. SAME—ALLOWANCE OF CLAIMS—NOTES AFFECTED BY FRAUD.**

A debtor, in effecting a composition with his creditors, secretly agreed to transfer to one a note of a third person, to be applied in reduction of his claim. A statement of account was made by the creditor, in which the debtor was credited with the amount of such note at its face value, and the creditor was given notes of the debtor for the amount due under the composition on the balance remaining after such credit. The note was retained by the debtor for some months thereafter, when it was delivered to the creditor. Subsequently the debtor was adjudicated a bankrupt, and some of the composition notes so given, or renewals thereof, which remained unpaid, were sought to be proved by the creditor. *Held*, that the delivery of the note of such third person, having been made after the composition had been effected, and when it could not have been enforced, was voluntary, and gave neither the bankrupt nor his trustee any right to recover the amount of the preference given pursuant to the fraudulent agreement; but that, the note having entered into the statement which was the basis upon which the composition notes were given, such notes were infected by the fraud to the extent of such preference, which the trustee, as representing the debtor, could require to be deducted before the notes were allowed.

**6. SAME.**

A note which was given in part for a valid consideration, and in part for a consideration against public policy, if the two portions are distinguishable, may be proven in bankruptcy for so much as was originally valid.

Appeal from and Petition for Revision of Proceedings in the District Court of the United States for the District of Massachusetts.

Charles K. Cobb, for appellant.

Jesse C. Ivy, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge.  Batchelder & Lincoln Company v. Whitmore is an appeal from a decree of the District Court. Batchelder & Lincoln Company, Petitioner, is a revisory petition with reference to the same subject-matter. As the only issue arises over the

allowance of a claim proved against an estate in bankruptcy, we have no occasion to consider Batchelder & Lincoln Company, Petitioner.

The debtor was adjudicated a bankrupt on a petition filed on April 9, 1901. In January, 1896, the Batchelder & Lincoln Company, in connection with other creditors of the debtor, who had made a general assignment, entered into a composition at the common law at 50 per centum of their several claims in full discharge thereof. The trustee in bankruptcy claims that when the Batchelder & Lincoln Company assented to the composition it entered into a secret agreement for an advantage over the other creditors, by virtue of which it was to receive, and did receive, a promissory note of one C. H. Stevens for $3,411.28, to be applied at its face on its claim.

The District Court found that there was such an arrangement, and that it operated as a fraudulent advantage to the Batchelder & Lincoln Company. On the other hand, it is claimed that the Stevens note was intrinsically worth only 50 per centum of its face, and was received at that rate. The oral evidence is not satisfactory on either of these propositions. But, in addition thereto, the record contains a formal written statement, made between the parties at the time of the transaction in 1896, which credited the Stevens note at its face on the claim of the Batchelder & Lincoln Company. It then computed 50 per centum of what remained—that is, of $8,615.66—amounting to $4,307.83; added to that $10,000 which the Batchelder & Lincoln Company loaned the debtor to aid him in adjusting with his other creditors, thus making a total of $14,307.83; deducted from this $6,013.47, and left a balance of $8,294.36, which was settled for by the debtor's notes. The parties must stand where they thus put themselves at the time of the transaction.

The $6,013.47 was drawn in cash from the assets in the hands of the debtor's assignee as exactly 50 per centum of the original claim. It is asserted that this was done in order that the impression might be given that it was the whole amount received by the Batchelder & Lincoln Company, in accordance with the composition. The record is consistent with that suggestion, and yet it does not clearly sustain it; but, in view of the written statement already explained, we agree with the District Court that, even if the advantage thus obtained by the Batchelder & Lincoln Company was not fraudulent in the obnoxious sense of the word, it was secretly bargained for, compulsory in its nature, and therefore contrary to the principles of law applicable to circumstances of this character.

The Batchelder & Lincoln Company claims that, though it received a substantial benefit through the receipt of the Stevens note, yet this did not arise as a consideration for its becoming a party to the composition, but for its advancing the $10,000. If such had been the fact, and the same had been made known to the creditors, it is possible that no objection could now be made; but clearly the Batchelder & Lincoln Company could not, in connection with a composition entered into by it jointly with other creditors, avail itself of so large a compensation while maintaining the secrecy which there is no question it did maintain. Where the relations between creditors

become so confidential as they are when they unite in a common adjustment with a debtor, it is well settled that they require the disclosure of a transaction of so substantial a character, promising one of them the possibility of so large a profit; so that, according to fundamental principles, a creditor secretly obtaining a return so large stands no better in the law whether the same is intentionally stipulated for as a direct inducement to becoming a party to a composition or is assented to in consequence of the necessities of the debtor with reference to obtaining the means for making his payments. Therefore in every aspect we must hold that the conclusion of the District Court was correct in this particular.

The 8th day of January, 1896, was the approximate time when the Batchelder & Lincoln Company agreed to sign the composition and receive the Stevens note, while the final adjustment was effected on January 23d. The note remained in the possession of the debtor until some months after the composition had been signed and the adjustment completed. Then it was turned over to the Batchelder & Lincoln Company. It is claimed by the trustee in bankruptcy that this was a significant part of the fraudulent scheme, the debtor testifying that the representative of the Batchelder & Lincoln Company stated, when the arrangement was made in January, that it would not do to incur the risk of its being then known that the note was in its possession. We allude to this matter, however, for the sole purpose of showing that the act of delivering the note to the Batchelder & Lincoln Company was after the composition deed was signed and the adjustment completed.

The notes given on January 23, 1896, amounted, as we have said, to $8,294.36. In drawing them, no discrimination was made between any parts of the transaction. Therefore all the notes were infected until the amount of the fraudulent advantage was worked out of them. This has never been done, because, although the other notes then given have disappeared from the case, yet one note of $3,986.53 was renewed from time to time, the interest being mainly paid; and ultimately the $3,986.53 resolved itself into two promissory notes on demand of $2,000 each. These were subsequently merged in another note of $5,800, which is included in the proof now in dispute. Thus this note of $5,800 is infected to the amount of the original unlawful advantage stipulated for by the Batchelder & Lincoln Company; and yet that corporation has not in fact received any part of that intended advantage, and will not have received it all until the note is fully paid.

The Stevens note was, as we have stated, $3,411.28; so that the doubtful amount included in the claim now offered in proof is one half thereof, to wit, $1,705.64. Interest on this has been paid by the debtor, as we have said, except a fraction included in the two notes of $2,000 each, amounting to $13.47. So far as paid, it has been voluntarily paid; so that, as we will see hereafter, under the rules which govern this appeal, it cannot be taken further cognizance of. So far as interest has not been paid, it infects the note now in proof, and it is to be added to the $1,705.64, making $1,711.37 in question.

The essential part of the decree appealed from was as follows:

"That in 1896 the creditor received from the debtor an improper preference; that said preference consisted of a portion of the note of one Stevens, amounting to $1,808; that said preference should be surrendered before the proof of any part of the creditor's claims; that the debtor was insolvent four months previous to the filing of the petition; that the creditor had received preferential payments during that time; that the creditor may prove said debt on surrendering the said sum of $1,808 and said preferential payments."

The trustee in bankruptcy did not appeal, so that various propositions made by him—as, for example, that the balance of $8,294.36 was a void debt, and that all notes given in discharge thereof were void—are not before us, except so far as they necessarily come in incidentally in disposing of the issue which we have to consider. Also, no error was assigned as to so much of the decree as referred to preferential payments during the four months previous to the filing of the petition in bankruptcy; so that nothing comes before us in that connection, although, perhaps, it might be well questioned whether, until everything of that nature was disposed of, the decree was final and appealable.

The trustee seems to have proceeded on the theory that the transaction in issue amounted to a preference within the reach of the existing statutes in bankruptcy, and that, also, he represents, not only the debtor, but the creditors in composition. The law in both of these respects is otherwise. The transaction, even if it had occurred after the present bankruptcy statutes had been enacted, would not have been a preference within their meaning; and there is nothing therein, nor in any decision of the Supreme Court with reference thereto, or with reference to any previous statute of bankruptcy, which would justify us in holding that such legislation reaches a preference given before it was passed. Traders' Bank v. Campbell, 14 Wall. 87, 94, 20 L. Ed. 832; Warren v. Moody, 122 U. S. 132, 138, 7 Sup. Ct. 1063, 30 L. Ed. 1108. Moreover, the trustee does not stand for the body of creditors as it existed in 1896, but for those in being when the proceedings in bankruptcy were commenced. Warren v. Moody, ubi supra. There is nothing in the record to indicate that the creditors who accepted the composition in 1896 are dissatisfied therewith, or desire to avail themselves of their right to avoid it and take the hazards of the present proceeding. It should be observed in this connection that, even if the transaction between the bankrupt and the Batchelder & Lincoln Company had been fraudulent in intent, this would not have rendered the composition void so far as the other creditors were concerned, because, notwithstanding the forms of expression heretofore used by the text-books and the courts, the modern rule is that, with rare exceptions, transactions are not void, but voidable. Neither in any text-writer nor in any of the very few decisions of the courts which we are bound to follow is there the slightest expression that the body of the creditors entering a composition acquire any right by reason of a fraudulent advantage given one of them, except to avoid the adjustment and collect the balance of their debts from whatever assets they can find belonging to their debtor. They have no lien or other right, in the proper sense of the terms, recognized either by the common law or by chancery,

with reference to any amount received by a creditor who obtained such an advantage. Therefore it follows that we look at this case only in so far as the trustee in bankruptcy represents the debtor.

The law applicable to proofs of debt in bankruptcy is governed by equitable considerations. This has been so often repeated that it is not necessary for us to cite authorities in reference thereto. Such considerations do not require that the note of $5,800 should be rejected, and the creditor thrown back on a proof of the original debts to the same amount as might be allowed on a proof of the note after a deduction of the proportion to which it is infected. Such distinctions do not affect the substance, but are only matters of form, in which equity does not delight, whatever may be the case at common law. The rule was so determined in bankruptcy in Ex parte Mather, 3 Ves. 373, 374, which has ever since been regarded as law. Byles on Bills (7th Am. Ed.) 445; Williams on Bankruptcy Practice (7th Ed.) 122, 123. The rights of the parties will be entirely protected, and exact justice done, by so far modifying the decree of the District Court as to permit the proof of the claim of the Batchelder & Lincoln Company, less $1,711.37, according to the computation which we have already made.

In no aspect of the case can any right of surrender accrue to the trustee in bankruptcy on account of the transaction with the Stevens note, and in no way can the trustee in bankruptcy derive any benefit from what occurred in 1896 except on the rule we have stated. The note, as we have said, was delivered by the debtor to the Batchelder & Lincoln Company several months after the transaction of the composition was completed, and when the debtor was no longer under compulsion. At that time there was no motive operating on the debtor of the kind of which either the courts of common law or of chancery so far take cognizance as to hold that, in consequence thereof, payment or delivery of money or property is other than purely voluntary.

The rules applicable, so far as the federal courts are concerned, are settled by a few decisions of the English courts of Chancery and King's Bench, which are in harmony with the general principles of the law, and which have been accepted by text-writers of authoritative standing. The matter has not been under the hand of the Supreme Court or of the House of Lords. The earliest English case on this topic, concerning a composition at common law, was in chancery, decided in 1740 by Lord Hardwicke—Spurrett v. Spiller, 1 Atk. 105. The reasons for the general rule stated by the Lord Chancellor were somewhat fanciful, and need not be especially referred to. Next was Smith v. Bromley, found in the note to Jones v. Barkley, 2 Doug. 696, and decided by Lord Mansfield in 1760. This case, however, rested on the statutes of bankruptcy. The observations contained in it with reference to compositions at the common law were non coram judice, and are not necessarily to be accepted by the profession. The first case at common law which touches the gist of this topic was decided in the King's Bench in 1788—Cockshot v. Bennett, 2 D. & E. (Term Rep.) 763. It did not concern a payment

before composition was effected, but a note then given and negotiated under such circumstances that the debtor was compelled to pay it. Therefore the payment was compulsory by relation to the date of giving the note. The next authoritative case was Atkinson v. Denby, in the Exchequer in 1861, 6 H. & N. 778, affirmed in the Exchequer Chamber, 7 H. & N. 934. All that was there decided was that a payment made before composition was effected as a consideration for going into the composition could be recovered back. Although not to be accepted as controlling our decision in any way, Ex parte Milner, decided by the Court of Appeal in 1885 (15 Q. B. D. 605), seems to have been the first opinion which undertook to state in a philosophical way the reason underlying the rule. There Brett, Master of the Rolls, at page 612, referring to a composition, said: "Unless there is something in the deed which is plainly to the contrary, the equality between the creditors becomes an implied condition of the deed."

In the same way, Pollock's Principles of Contract (7th Ed.) 280, describes a composition as an arrangement made between creditors "on the assumption 'that they are contracting on terms of equality as to each and all.'" In other words, the relations between creditors entering into a composition are confidential, involving that high degree of mutual faith and abstinence from concealment which concerns all like relations. There is an implied understanding that all are on an equality; and any secret agreement in violation of that understanding is fraudulent according to the rules governing chancery courts, and for over a century has been recognized as such according to the common law. Therefore any secret agreement between the debtor and any single creditor in contravention of equality is against the policy of the law, and, so long as it remains executory, it cannot be enforced. It is not necessary to ascertain why any particular creditor may deem the rule of equality of importance. Various reasons have been given therefor, and different reasons may commend themselves to different creditors. It is enough that the right of equality exists, and that each creditor is entitled to look to it for whatever reason may seem to him advantageous, or even without any special reason therefor.

So far, on the commonest rules of law, the position is clear that money paid by the debtor under the circumstances of Atkinson v. Denby, ubi supra, or a note given by him and negotiated, so that he is compelled to take it up under the circumstances of Cockshot v. Bennett, ubi supra, affords a right of action to recover what he has thus lost. This is only an application of the common rule that, even where both parties have entered into a contract against public policy, the one who, by the fiction of the law, is moved thereto by his distressed circumstances, can generally recover back what he has paid. We say fiction of the law, because, as in many other cases where a fiction can do no injustice, one party or the other is assumed to act under coercion, by reason of the impracticability of establishing any other workable rule. This is illustrated with reference to this particular topic by the fact that this right of recovery was supported by Ramsdell v.

Edgarton, 8 Metc. 227, 41 Am. Dec. 503, although the case shows that the creditor was a reluctant party, and the debtor induced him to come into the arrangement.

The question here is whether a payment agreed to before a composition is effected, but made afterwards, affords a basis of recovery by the debtor. There is nothing in this class of cases which takes such a transaction out of the ordinary rule already stated, by virtue of which the turning over of the Stevens note several months after the composition was completed was voluntary, and afforded no specific basis of action. This was decided in 1839 by the King's Bench in Wilson v. Ray, 10 A. & E. 82. As already said, this precise point has never come before the Supreme Court or the House of Lords, and Wilson v. Ray was decided long after the Revolution; but it has always been accepted by text-writers of authority. Chitty on Contracts (11th Am. Ed.) 934; Pollock's Principles of Contract (7th Ed.) 385. Of all the modern text-writers on contracts, Pollock is the most careful, and best reflects the English bench and bar. Chitty on Contracts, in its various forms, including the ninth English edition, on which the last American edition is based, although largely increased beyond anything done by Mr. Chitty, has long been received as the standard authority on its branch of the law. The best statement of this fact is, perhaps, the introduction by Mr. Perkins to the American edition to which we have referred. Therefore we have here a decision of the King's Bench, directly in point, made over 60 years ago, which has never been reversed or discredited by the Supreme Court or the House of Lords, and which has been recognized as the law, and is still so recognized, by the standard text-writers to whom we have referred. When we find this condition of decisions by courts of customarily recognized authority, connected with their long adoption by text-writers who can be accepted as standard, we have the highest assurance that the result represents the mature conviction of both the bench and the bar; and when, moreover, as in this case, that result is in harmony with the general rules of the law, and has not been questioned by any tribunal which federal courts ought to look to as controlling, it should be accepted.

The consequence is that, as the delivery of the Stevens note to the creditor in this appeal was not under stress, the fact that it received it can in no event require it to restore money or property as a condition precedent to the allowance of so much of its claim as is justly due it. In any view, the note has become only an element in the accounting made in 1896, as we have already explained. Although it remained in the hands of the debtor, yet he held it for the creditor on the terms of the accounting; and when he surrendered it, although the surrender was voluntary, he did it as of the date of the adjustment. Therefore, so far as the questions before us are concerned, the claim offered in proof must be allowed, subject only to the deduction of $1,711.37, with a proper adjustment of interest on the note of $5,800, as we have already said. Thus the creditor gets exactly what it is fairly entitled to.

The petition must follow the rule already adopted in various cases before us. Hutchinson v. Le Roy, 51 C. C. A. 159, 113 Fed. 202.

In No. 443, Batchelder & Lincoln Company, Petitioner, the petition is dismissed for want of jurisdiction, without costs.

In No. 437, Batchelder & Lincoln Company v. Whitmore, the decree of the District Court is modified, and the case is remanded to that court, with directions for further proceedings not inconsistent with our opinion passed down this day; and the appellant recovers its costs of appeal against the appellee.