## Aarons v. Stone et al.

*David E. Rattin* and *Charles Hunsicker*, for plaintiff.
*Wexler & Weisman*, for defendants.

LEVINTHAL, J., June 24, 1940. — This is an action of assumpsit to recover the sum of $9,201 brought by plaintiff as residuary legatee under the will of her husband, Bernard D. H. Aarons, who died May 28, 1933. In the statement of claim it is alleged that Bernard Aarons at the time of his death was the holder of seven promissory notes executed by Stone and Roberman, individually and as copartners; six of the notes, five for $300 and one for $200, were dated July 21, 1932; the seventh was for $5,000 and was dated May 6, 1933. These notes were duly endorsed to plaintiff by the executor of her husband's estate.

Plaintiff further alleged that on July 10, 1938, defendants, individually, executed and delivered to her a promissory note for $9,201, payable one year from that date; that this was the last in a series of one-year notes delivered to her by defendants in renewal of the seven notes delivered in 1932.

Defendants subsequently filed an affidavit of defense setting forth new matter. Since the case is now before us upon plaintiff's rule for judgment for want of sufficient affidavit of defense, the averments of fact contained therein must be taken as true. The material facts thus established are as follows:

Prior to July 1932, Stone and Roberman were partners in a furniture business and traded under the name of

Grand Upholstered Furniture Company. On July 21, 1933, they sought to obtain a loan of $5,000 from plaintiff's husband. An agreement was reached whereby they received only $4,500 in cash, Aarons having deducted $500 as a bonus. As evidence of the loan defendants executed and delivered to Aarons 17 promissory notes, 16 for $300 and one for $200, payable in consecutive months beginning August 1932. At the same time they gave Aarons a blanket judgment note for $5,000 as security for the loan under an oral agreement that, in the event of a default in payment of any of the 17 original notes, judgment could be entered on the judgment note for the balance unpaid at the time of default.

Prior to September 16, 1933, defendants paid the first 10 notes with interest, and also paid $150 on account of the eleventh note, total payments on principal thus aggregating $3,150. Meanwhile, Aarons had died and plaintiff succeeded to his interests.

In April 1933, the partnership experienced financial difficulties, but succeeded in securing an extension agreement with all its creditors except Aarons. In September 1933, however, the partnership found that the extension was of no use to them; consequently its affairs were placed in the hands of a creditors' committee. The committee recommended a composition agreement whereby all creditors would receive 10 percent of their claims in full settlement thereof. To effect the composition, a corporation was to be formed by disinterested persons to take over the partnership assets.

All the creditors except plaintiff conditionally accepted the recommended plan. Plaintiff informed defendants that she would enter the proposed composition only if she were secretly assured payment in full of the notes still unpaid. In order not to jeopardize the settlement, defendants acquiesced. Plaintiff agreed to give the partners 10 years in which to pay the debt; she also agreed that the other creditors might be informed of her acceptance of the composition in order to induce them to give their final

acceptance. Subsequently, the corporation was chartered, creditors were paid their 10 percent, the partnership assets were transferred to the corporation, and the partnership was dissolved in October 1933.

A new note was thereupon executed in October 1933, but was antedated to July 1933. The face amount of the new note included the balance due and owing, the allegedly usurious bonus of $500, and $5,000 additional, it being understood that the latter amount was in lieu of the original judgment note and for the purpose of security only. On the maturity date of that note, a renewal note was executed by Stone and Roberman as joint obligors, the face amount of which included interest for the preceding year. This process was repeated each year until the execution of the last note for $9,201 on July 10, 1938.

In the argument before the court on a statutory demurrer, defendants averred that the suit was brought, not upon the 1938 note, but upon the original obligation.

Defendants contend that plaintiff's claim is not enforcible for six reasons, all of which are pleaded in the affidavit of defense:

1. $5,000 of the claim represents the face value of an original note given as collateral security only.

2. $500 of the claim represents an usurious bonus deducted from the loan made to defendants by Aarons.

3. Part of the claim consists of interest compounded on the above uncollectible items.

4. The renewal note of July 1933 was a secret preference given plaintiff to induce her to join the composition of October 1933, constituted a fraud on other creditors of defendants, and is therefore unenforcible.

5. Since that note was unenforcible, the yearly renewal notes are tainted with the same fraud, lack consideration, and thus afford no basis for a cause of action.

6. In any event, the claim, being based upon the original loan of 1932, is now barred by the statute of limitations.

Clearly no part of plaintiff's claim which, in fact, represents security given for the sum originally advanced to defendants in 1932 can be collected in addition to the unpaid principal of the debt. Unusual as it may be to lump both the unpaid balance and the face amount of a collateral judgment note into one renewal note, the averments to that effect in the affidavit of defense raise factual issues which cannot be disposed of on a preliminary rule for judgment. Likewise the $500 item, if exacted as a bonus for a cash advance of $4,500, would be uncollectible. Such a charge in addition to legal interest is usurious: Act of May 28, 1858, P. L. 622, sec. 2, 41 PS §4. Interest on such items is equally uncollectible.

At the time of the composition in October 1933, $1,350 of the sum actually advanced by plaintiff's decedent remained unpaid. Defendants insist that the secret note given to induce plaintiff's acceptance of the creditors' settlement was fraudulent and, therefore, voidable. This is a well-established rule of law. Composition agreements are founded upon the assumption that all signers will share equally in the distribution of the embarrassed debtor's assets; all are expected to sacrifice a like proportion of their just claims. As a result, any promise between a single creditor and the debtor, made prior to the conclusion of the composition, is deemed to have been made under duress; the creditor cannot enforce it, and payments made thereunder can be recovered by the debtor: Lee v. Sellers et al., 81* Pa. 473 (1875) ; Batchelder & Lincoln Co. v. Whitmore, 122 Fed. 355 (C. C. A. 1st, 1903) ; Glenn on Liquidation (1935) §§100, 101.

Subsequent events in this case, however, have rendered that principle inapposite. Every year since 1933 defendants have executed a note in renewal of the original obligation. A reiteration of the promise to pay in full or a payment made after the composition has been completely executed is considered voluntary and amounts to a waiver of the defenses theretofore available to the debtor. The discharge from existing obligations granted him under

the composition removes the duress which in legal contemplation existed prior thereto: Batchelder & Lincoln Co. v. Whitmore, supra, p. 360; Crowder v. Allen-West Commission Co., 213 Fed. 177 (C. C. A. 8th, 1914) ; Ferguson-McKinney Dry Goods Co. v. Beuckman, 198 Mo. App. 41, 198 S. W. 504 (1917). Nor does the new promise lack consideration; it was given, not in creation of a new obligation, but merely in recognition of a preëxisting debt and as a waiver of a defense which had previously barred recovery. Defendants can no longer, therefore, rely upon the fraudulent preference granted plaintiff to avoid repayment of its loan.

The statute of limitations likewise is unavailable as a defense to this action. Even though plaintiff may be resting her cause of action upon the original notes of July 21, 1932, the obligation represented thereby was included in the note for $9,201 executed in 1939. Defendants, as partners, were jointly liable upon the original notes; and the joint renewal note signed by them is both a clear acknowledgment of, and an express promise to pay, that debt. The first alone would be sufficient to toll the statute: McKelvey v. Ligonier Twp., 128 Pa. Superior Ct. 437 (1937). On the other hand, if plaintiff is suing upon the new note, the antecedent debt, though barred by the statute, is a valid consideration to sustain the subsequent promise: Vineland National Bank & Trust Co. v. Kotok, 129 Pa. Superior Ct. 309 (1937).

We see no defects in the caption of this case. Defendants are being sued on a partnership obligation. As partners, they are also jointly liable in their individual capacities for firm debts: Uniform Partnership Act of March 26, 1915, P. L. 18, sec. 15, 59 PS §37. Nor does the dissolution of the partnership affect this existent liability; it does not fall within any of the classes of debts designated by the statute as discharged upon such dissolution: Uniform Partnership Act, supra, sec. 36, 59 PS §98. Though the renewal notes were signed by defendants only in their individual capacities, it may be shown, if necessary, that the loan was actually received for firm pur-

poses: Griffee v. Griffee et al., 173 Pa. 434 (1896) ; Maffet & Rhoads v. Leuckel, 93 Pa. 468 (1880) ; In re Davis & Trousdale, 280 Fed. 136 (S. D. Tex. 1922). Indeed, in our opinion, this fact is of little significance, since it appears that the firm assets have long since been transferred to third persons with plaintiff's consent. The individual liability of defendants is, therefore, the only remedy still open to plaintiff.

We must, therefore, conclude that, at least as to part of the claim sued upon, defendants' affidavit of defense is insufficient in law. They have admittedly received $4,500 in cash from plaintiff's husband, of which only $3,150 has been repaid. The balance of $1,350 is due and owing, and no just defense thereto has been offered. It is permissible for the court to enter judgment for that part of the claim admitted to be due, though plaintiff's rule seeks judgment for the full amount of its claim: Fulton Farmers Assn. v. Bomberger, 262 Pa. 43 (1918).

The rule for judgment is accordingly made absolute as to $1,350 with interest from the due date thereof; as to the balance of the claim, the rule is discharged and plaintiff is ordered to reply to the new matter pleaded in the affidavit of defense within 15 days.

*On petition for reargument*

LEVINTHAL, J., July 16, 1940.—This is a suit to recover the balance of a loan advanced in 1932 by plaintiff's decedent to defendants. On June 24, 1940, this court made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense as to $1,350 of the claim. Defendants now seek a reargument, it being averred in their petition that the court erred in refusing to sustain their contention that a composition agreement effected in 1933 and pleaded in the affidavit of defense bars plaintiff from asserting this claim.

The composition agreement was entered into by all of defendants' creditors, but plaintiff's acquiescence was conditioned upon her receiving a secret preference, a promise to pay her claim in full. A note for the full amount of her

claim was, therefore, executed by defendants after the other creditors had been paid their stipulated shares. This note was renewed yearly until 1939.

In refusing to sustain the defense pleaded, we held that the preference, though voidable when first agreed upon, could now be enforced because the renewal notes given each year operated as a waiver of the defense theretofore available to the debtor. Defendants have pointed out to the court that the general law on the subject is not in accord with our position. In 12 C. J. 296, §106, it is stated:

"An agreement, promise, or security for the payment of all or a part of the balance of the debt compounded, given to a creditor after the composition is effected, will be void and unenforceable as a fraud on the others if given in pursuance of a secret agreement or understanding existing at the time of the composition; and even if there is no such agreement or understanding, it will nevertheless be equally unenforceable, as a fraud, if the composition is executory and not yet performed, and as without consideration if the composition is executed or performed, unless there is new consideration, or the promise is under seal, for in the latter case there is no moral obligation to pay the balance over the composition. On the other hand, it has been held that an arrangement made by a debtor with a creditor, in preference of a particular debt, after a composition has been completed, will not be considered a fraud on the other creditors, if there was no previous agreement to make such an arrangement which operates as a consideration for the composition."

The only Pennsylvania case involving this exact problem that has come to our attention is Callahan v. Ackley, 9 Phila. 99 (1873), which, though in accord with the above statement of the law, has apparently never been cited in later decisions.

A payment of the balance or part of the balance remaining unpaid after the composition, on the other hand, made after the composition and not in pursuance of any

prior secret agreement or understanding, is not a fraud on the other creditors, is considered voluntary, and cannot be recovered by the debtor: 12 C. J. 297, §107.

The legal basis for refusing to allow the preferred creditor to enforce his secret agreement and for permitting the debtor to recover payments made pursuant thereto prior to the composition is that the debtor, in view of his distressed circumstances, acted under duress: Glenn on Liquidation (1935) §101. That this is often only a fiction of the law is clear from the fact that the debtor himself is sometimes the moving party in effecting the preference, yet that circumstance does not affect the debtor's right to disregard the agreement. See Batchelder & Lincoln Co. v. Whitmore, 122 Fed. 355, 361 (C. C. A. 1st, 1903). But if duress is the reason for the unenforcibility of secret preferences, the agreement thus coerced is voidable, not void. For duress, save in exceptional cases, does not absolutely vitiate a transaction, but "generally only gives to the party coerced a right to rescind the transaction whether executory or executed." See 5 Williston on Contracts (rev. ed. 1937) §1626. It is upon this theory that payments, made after the composition and not pursuant to a secret agreement, cannot be recovered by the debtor. Since the coercion is then removed, there is no principle upon which the courts can hold that the payments made were other than voluntary: Batchelder & Lincoln Co. v. Whitmore, supra, p. 360.

It would seem necessarily to follow that an executory promise made after the composition is completed should be equally untainted. The duress is no longer operating upon the debtor. He has, it is true, a defense to suit upon the prior promise, but his renewal of that promise should not be rendered meaningless by a court, overzealous in its attempt to discourage preferences in order to preserve equality among the composing creditors. It is as voluntarily made as an actual payment of money, and should be treated as a manifestation by the debtor that he has waived the defense previously available to him.

In no way would this prejudice other creditors, for their right to avoid the composition and to revert to their original claims remains unaltered.

In this case, however, we are not forced to disagree with the established rules of law, for in our judgment, our former position must be maintained for another reason. Even the preferred creditor is entitled to enforce the composition agreement: Glenn on Liquidation §101. Such an arrangement is a type of accord and satisfaction, and the rule that an executory accord is no defense to the debtor applies. In the instant case, Mrs. Aarons never received her designated share under the composition agreement. Thus, it cannot operate to bar her recovery of the original claim. See Kamber v. Becker, 27 Pa. Superior Ct. 266 (1905), wherein it was held that an affidavit of defense to be sufficient must aver not only execution of the agreement but also payment to plaintiff of the amount therein agreed upon.

The petition is accordingly dismissed.