## FERGUSON-McKINNEY DRY GOODS COMPANY, Respondent and Plaintiff in Error, v. GEORGE O. BEUCKMAN, Appellant and Defendant in Error.

St. Louis Court of Appeals. Argued and Submitted October 5, 1917. Opinion Filed November 6, 1917.

1. **COMPOSITIONS WITH CREDITORS: Secret Preferences: Validity.** A creditor fraudulently securing a secret preference over other creditors cannot recover on a note representing such preference after receiving payment under a composition agreement.

2. ———: **Bankruptcy: Promise after Discharge: Consideration: Moral Obligation.** A debtor who has gone into a composition with his creditors, or who has been discharged in bankruptcy, if he afterwards voluntarily promises his debtor to pay the unpaid part of the original debt, contracts a moral obligation which is a good and sufficient consideration to pay such debt.

3. ———: **Secret Preference: Validity.** A debtor's note given after a composition settlement as a substitute for a previous note representing a secret preference is void.

4. ———: ———: **Estoppel.** A creditor who induced other creditors to accept a composition settlement without signing it cannot claim that such settlement was void for lack of signatures in his suit to recover on a note representing a secret preference given him by the debtor.

5. ———: **Validity.** The failure of certain creditors who accepted composition payments to sign the composition agreement does not render such agreement void, but only voidable.

6. ———: **Secret Preference: Recovery.** A debtor paying money to a bank for distribution among his creditors under a composition agreement cannot recover back an alleged preferential payment to a creditor, since he lost all interest in the property beyond a right to have the bank account for its proper distribution.

7. **PAYMENT: Voluntary Payment: Recovery.** Evidence examined regarding payment of an additional sum by a debtor to a creditor after having paid the amount specified in a composition agreement, and *held* to establish that the second payment was voluntary.

8. ———: ———: ———. A debtor cannot recover back a voluntary payment to a preferred creditor made subsequent to a composition agreement and payment thereunder.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Kent C. Koerner,* Judge.

AFFIRMED.

*Stern & Haberman, H. A.* and *Harry S. Gleick,* for plaintiff in error and respondent.

(1) Part A. The burden of proof is the duty resting upon the party who asserts the affirmative of an issue to prove the same by a preponderance of the evidence. Ranney v. Lewis, 182 Mo. App. 58, 64, 167 S. W. 601; Glover v. Henderson, 120 Mo. 367, 381, 35 S. W. 175, 41 Am. St. Rep. 695; Bathe v. Insurance Co., 152 Mo. App. 87, 94, 132 S. W. 743. (2) Where there is a finding of fact by the lower court sitting as a jury, and the record discloses sufficient evidence to sustain that finding, the appellate court must sustain it; and where there is no separate finding of fact, it will be presumed on appeal that the trial court reached the correct result. Paine v. O'Donnell, 191 Mo. App. 300, 301, 178 S. W. 873; Gentry v. Rider Jewelry Co.,——Mo. App.——194 S. W. 1057, 1060; Kansas City Breweries v. Teter,——Mo. App. — 194 S. W. 732; Stringfellow v. Roseborough Co.,—— Mo. App——196 S. W. 1050, 1053; Finkelnburg and Williams' Missouri Appellate Practice (2 Ed.), p. 149. Where the cause was tried by the court without the intervention of a jury, the court's findings of facts, supported by substantial evidence, are conclusive on appeal.

Barton v. Louisville & N. R. Co.,——Mo. App.—— 196 S. W. 379, 380; Rough v. Rough——Mo. App.——195 S. W. 501, 504. If a record is susceptible of two interpretations, that will be given it which will sustain the judgment of the inferior court. Stringfellow v. Roseborough Co.,——Mo. App.,——196 S. W. 1050, 1053; Finkelnburg and Williams' Missouri Appellate Practice (2 Ed.), p. 149. (3) Fraud will never be presumed where all the facts consist as well with honesty and fair dealing; where two views are open, one noble and the other not, courts are warranted in taking the nobler view. Kansas City v. Woerishoeffer, 249 Mo. 1, 32, 155 S. W. 779, 786; Garesche v. MacDonald, 103 Mo. 1, 158 S. W. 379; Ames v. Gilmore, 59 Mo. 537; Hardwicke v. Hamilton, 121 Mo. 465, 26 S. W. 342; Warren v. Ritchie, 128 Mo. 311, 30 S. W. 1023. (4) No property, including choses in action, belonging to a wife shall be deemed reduced to possession by the husband unles the wife's assent, in writing, shall have been given by the wife. Revised Statutes, Missouri, 1909, sec. 8309; McGuire v. Allen, 108 Mo. 403, 409, 18 S. W. 282; Hurt v. Cook, 151 Mo. 416, 427, 52 S. W. 396; Case v. Espenschied, 169 Mo. 215, 220, 69 S. W. 276. (5) A debtor who seeks to recover an alleged fraudulent payment made in accordance with a secret agreement entered into at the time of a composition must come with clean hands, and unless he can show that the payment was actually made under duress, or as the result of threats or compulsion, the doctrine "*in pari delicto*" applies. Wilson v. Ray, 10 Ad. & Ellis 82, 2 P. & D. 253; Moses v. Katzenberger, 1 Handy (Ohio) 46; Higgins v. Pitt, 4 Exch. *312. *325; Langley v. Van Allen & Co., 32 Can. Sup. Ct. 174, 182-3, semble; Crowder v. Allen-West Commission Co., 213 Fed. 177, 181, 129 C. C. A. 521; Smith v. Veigler, 17 N. Y. S. 338, 340; Solinger v. Earle, 82 N. Y. 393; Mehr v. Starr, 138 N. Y. S. 317; Crossley v. Moore, 40 N. J. Law 27, semble; Pollock on Contracts (8 Eng. Ed.), p. 403; Williston's Wald's Pollock on Contracts, p. 504; 12 Corpus Juris 292, sec. 94. (6) The title of a bankrupt to all of his property, including his choses in action, except that set aside as exempt, upon adjudication be-

comes divested by operation of law and thenceforth is *"in custodia legis;"* and when no trustee is appointed because the bankrupt has scheduled no assets, the bankrupt cannot after his discharge claim title to assets which he has concealed. Lazarus v. Musica, 234 U. S. 263, 266, 34 Sup. Ct. 851, 58 L. Ed. 1305, 32 Am. B. R. 559; First Nat. Bank v. Lasater, 196 U. S. 115, 25 Sup. Ct. 206, 49 L. Ed. 408; Rand v. Sage, 94 Minn. 344, 102 N. W. 864; Scruby v. Norman, 91 Mo. App. 517, semble; Fowler v. Jenks, 90 Minn. 74, 11 Am. B. R. 255; Laing v. Fish, 119 Ill. App. 645, semble; Patterson v. Boyd, 150 S. W. (Tenn.) 424; In re Abrahamson, 1 Am. B. R. 44. The decisions of the United States Supreme Court in construing the Bankruptcy Act are controlling upon the State Court. Rosenfeld v. Siefried, 91 Mo. App. 169; Wise Coal Co. v. Columbia Co., 123 Mo. App. 249, 264. (7) When a proposed agreement to compound a debt contains a provision that the agreement is not to be binding unless all creditors agree to accept, this provision is a condition which must be complied with; if it is not then there can be no composition. 12 Corpus Juris, 262, sec. 23; Falconbury v. Kendall, 76 Ind. 260; Artman v. Truby, 130 Pa. St. 619; 18 Atl. 1065; Laird v. Campbell, 100 Pa. St. 159, 164; Greer v. Schriver, 53 Pa. St. 259; Lower & Barron v. Clement, 25 Pa. St. 63, 66-67; Acker v. Phoenix, 4 Paige (N. Y.) 305; Cutter & Co. v. Reynolds, 47 Ky. (8 B. Mon.) 596; Seed Dry-Plate Co. v. Wunderlich, 69 Minn. 288, 290-1, 72 N. W. 122; Paulin v. Kaign, 27 N. J. Law 503, 512; Chase v. Bailey & Co., 49 Vt. 71, 74; Davis v. Doerr, 14 N. Y. 322, 325; Day v. Jones, 150 Mass. 231, 22 N. E. 898; Abel v. Allemania Bank, 79 Minn. 419, 422, 82 N. W. 680. The existence of a written contract cannot be proved by parol evidence of payments purported to have been made under it. Lionberger v. Pohlman, 13 Mo. App. 123; Blondeau v. Sheridan, 81 Mo. 545. The acceptance of payment under the composition is not a waiver of the provision that all must accept. 12 Corpus Juris, 263, sec. 25; Greer v. Shriver, 53 Pa. 259; Durgin v. Ireland, 14 N. Y. 322. (1) Part B. When the execution

Ferguson-McKinney Dry Goods Co. v. Beuckman.

and delivery of a promissory note are admitted by the maker, the defense of want of consideration is affirmative, and the burden of proof is upon the defendant. Revised Statutes of Missouri, 1909, sec. 2774; Home Building & Loan Ass'n v. Barret, 160 Mo. App. 164, 177, 141 S. W. 726. (2) When a proposed agreement to compound a debt contains a provision that the agreement is not to be binding unless all creditors agree to accept, this provision is a condition which must be complied with; if it is not, then there can be no composition. 12 Corpus Juris, 262, sec. 23; Falconbury v. Kendall, 76 Ind. 260; Artman v. Truby, 130 Pa. St. 619, 18 Atl. 1065; Laird v. Campbell, 100 Pa. St. 159, 164; Greer v. Shriver, 53 Pa. St. 259; Lower & Barron v. Clement, 25 Pa. St. 63, 66-67; Acker v. Phoenix, 4 Paige (N. Y.) 305; Cutter & Co. v. Reynolds, 47 Ky. (8 B. Mon.) 596; Seed Dry-Plate Co. v. Wunderlich, 69 Minn. 288, 290-1; 72, N. W. 122; Paulin v. Kaign, 27 N. J. Law, 503, 512; Chase v. Bailey & Co., 49 Vt. 71, 74; Day v. Jones, 150 Mass. 231, 22 N. E. 898; Abel v. Allemania Bank, 79 Minn. 419, 422; 82 N. W. 680. The existence of a written contract cannot be proved by parol evidence of payments purported to have been made under it. Lionberger v. Pohlman, 13 Mo. 123; Blondeau v. Sheridan, 81 Mo. 545. The acceptance of payment under the composition is not a waiver of the provision that all must accept. 12 Corpus Juris, 263, sec. 25; Greer v. Shriver, 53 Pa. 259; Durgin v. Ireland, 14 N. Y. 322. (3) A subsequent voluntary promise to pay a debt discharged by a composition agreement is based upon a sound moral consideration and may be enforced, according to the better view. Trumbull v. Tilton, 21 N. H. 129; Willing v. Peters, 12 Sergeant & Rawle (Pa.) 117.

*John A. Blevins* and *John E. Murphy* for appellant and defendant in error.

(1) It is a well established rule that a promissory note or other security given by a debtor to a creditor

as a secret preference in order to induce the latter to join in a composition agreement with other creditors of the debtor, is fraudulent and void in the hands of the payee and the debtor may himself set up the invalidity as a defense in an action wherein it is sought to be enforced. Brown v. Everett, 111 Ga. 404; In re Chaplin, 115 Fed. R. 163; Crossley v. Moore, 40 N. J. L. 27; Bean v. Brookmire, 2 Fed. Cases, p. 1134 (Mo. Case); Bullene v. Blain, 4 Fed. Cases, 646; Atkinson v. Denby, 7 H. & N. 933; Smith v. Brompley, 2 Doug. 696 (Note); Clements Appeal, 49 Conn. 519; Willis v. Morris, 63 Texas 458; Glenn Falls Natl. Bk. v. Van Rostrand, 85 N. Y. S. 50; Breck v. Cole, 4 Sandf. (N. Y.) 79; Woodman v. Stow, 11 Ill. App. 613; Hardie v. Scheen, 110 La. 612; Howe v. Litchfield, 3 Allen (Mass.) 443; Story on Equity Jurisprudence, p. 385, par. 379; O'Shea v. Collier White Lead Wks., 42 Mo. 391; Cockshott v. Bennett, 2 T. R. 763; Moore v. Sanford, 1 Griff. 288; Gilmour v. Thompson, 49 Howard (N. Y.) 198; In re Lenzberg's Policy, L. R. 7 Ch. Div 650; Turner v. Hoole, 16 English C. L. Reports, 419; Mare v. Warner, 3 Griff. 100; 16 Am. & Eng. Anno. Cases, 1072. (2) The debtor may, in defense to an action upon a note so given, not only set up that it is void, and defeat a recovery thereon, but may, by way of cross-action or counter-claim, claim and obtain a judgment against the plaintiff for the money paid in pursuance of the illegal supplemental agreement. In re Chaplin, 115 Fed. Rep. 163; Breck v. Cole, 4 Sandf. (N. Y.) 79-83; Cockshott v. Bennett, 2 Term. R. 763; Story on Eq. Jurisprudence, page 385, par. 379; Bean v. Brookmire, 2 Fed. Cases 1134; Crossly v. Moore, 40 N. J. L. 27; Brown v. Everett, 111 Ga. 494. (3) Money paid under a secret agreement as an inducement to the creditor to sign or in excess of his claim under the composition, may be recovered back by the debtor, as the law regards the payment as having been made under duress, and recovery is allowed on the ground of public policy. 6 American & English Enc. of Law, page 396; Brown v. Everett,

Ridley Ragen Co., 111 Ga. 404; Bean v. Brookmire, 2 Federal Cases 1134 (Mo.); Crossley v. Moore, 40 N. J. L. 27; Smith v. Cuff, 6 M. & S. 160; Willis v. Morris, 63 Texas 458; Atkinson v. Denby, 7 H. & N. 943; Story on Equity Jurisprudence, page 385, paragraph 379. (4) It is immaterial whether the security is given before or after the payee has given his assent to the composition agreement, if when such assent is given there is an understanding, tacit or express, that the debtor shall give the payee a preference, and the security is given in persuance of such understanding. Clements Appeal, 52·Conn. 464; Woodman v. Stow, 11 Ill. App. 613; Hardie v. Scheen, 110 La. 612; Howe v. Litchfield, 3 ·Allen (Mass.) 443; Willis v. Morris, 63 Texas, 458. (5) A valid and binding composition is not essential to render invalid a security given as a preference; the invalidity of the secret preference springs from the character of the transaction in violation of commercial integrity and ordinary business morality. Glen Falls Nat. Bank v. Van Rostrand, 85 N. Y. S. 50, affirmed in 103 App. Div. 598. (6) To pay one creditor or his agent a larger sum than was paid others, as a condition of accepting the compromise, is void, and if the creditor's agent was specially retained by the debtor to urge the compromise, any promise to pay the agent for such service is void. Bullene v. Blain, 4 Fed. Cases 646; Friedberg v. Tresitschke, 36 Nebr. 881. (7) A composition performed operates as such an absolute discharge of the debts included in its scope that a subsequent promise to pay those debts cannot be enforced, being entirely without consideration; the moral as well as the legal obligations of payment is considered to be discharged. Bates v. Rosenberg, 121 N. Y. S. 335; Brown v. Everett, 111 Ga. 404; Warren v. Whitney, 24 Maine 561; 6 Amer. & Eng. Enc. of Law, page 390. (8) As to whether a creditor who has made a secret fraudulent contract more beneficial to himself than the other creditors in signing a composition may thereafter claim that the composition is void on account of fraudulent preferences to

other creditors, and demand payment of his whole claim, the weight of authority is against the right of such creditor to ignore such composition. Baldwin v. Roseman, 49 Conn. 105; O'Brien v. Greenbaum, 92 Calif. 104; Mallalien v. Hodgon, 16 Q. B. 689, 23 L. R. A. (Old Series) page 36. (9) In order to entitle a creditor from whom preferences of other creditors have been concealed to relief from such a fraud by avoiding the composition agreement, he must come into court with clean hands; and when it appears that the plaintiff himself, as a consideration for his assent to the agreement, bargained for and obtained a secret preference over other creditors who signed the agreement, and which was fraudulent as to them, he is not entitled to any relief because other creditors obtained advantages similar to his own. O'Brien v. Greenbaum, 92 Calif. 104; White v. Kuntz, 107 N. Y. 518; Mallalien v. Hodgon, 16 Q. B. 689, 16 Ad. & E. (N. S.) 690; Child v. Danbridge, 2 Vern. 71; 6 American & Eng. Enc. of Law, page 398. (10) It is no defense to an action of this kind that the composition deed was invalid because not signed by all the creditors, pursuant to its terms, it appearing that the greater part of the creditors believed that the composition had been signed by all creditors in good faith. Bean v. Brookmire, 2 Fed. Cases 1132; Willis v. Morris, 63 Texas 458; Hardie v. Scheen, 110 La. 612; Woodman v. Stow, 11 Ill. App. 613. (11) Under the National Bankruptcy Act of 1898 (section 70), the appointment of a trustee is essential to divest the bankrupt of the title to his property, and therefore an adjudication in bankruptcy does not divest the bankrupt of the title to a chose in action, where the adjudication is had without the appointment of a trustee. Rand v. Iowa Central Ry. Co., 186 N. Y. 58, reversing same case in 96 N. Y. App. Div. 413 (1906); Johnson v. Collier, 222 United States 538 (1911); Fuller v. Jameson, 184 N. Y. 605; Fuller v. New York Fire Ins. Co., 184 Mass. 12; Gordon v. Mechanics & Traders Ins. Co., 120 La. 441; Remington on Bankruptcy Supplement, sec. 1120, page 278; Black on Bankruptcy, 1914

Edition, sec. 197, page 490; 1 Loveland on Bankruptcy, pages 757-758; Collier on Bankruptcy (11 Ed.), page 220. (12) If a bankrupt owns a chose in action, the existence of which chose is not disclosed by him in bankruptcy proceedings, and they are therefore terminated without the appointment of any trustee, the bankrupt's title to such chose in action does not pass out of him, and he may subsequently maintain an action thereon. Rand v. Iowa Central Ry. Co., 186 N. Y. 58, (1906); Johnson v. Collier, 222 United States 538 (1911); Fuller v. Jameson, 184 N. Y. 605; Fuller v. New York Fire Ins. Co., 184 Mass. 12; Perry v. Carnes, 86 Mo. 652; Shipman v. Daubert, 7 Mo. App. 576; Wilsey v. Jewett Bros. Co., 122 Iowa, 318; Griffin v. Mutual Life Ins. Co., 119 Ga. 664; Gordon v. Mechanics & Traders Ins. Co., 120 La. 441; Remington on Bankruptcy Supplement, sec. 1120, page 278; Black on Bankruptcy (1914 Ed.), sec. 197, page 490; 1 Loveland on Bankruptcy, pages 757-758; Collier on Bankruptcy (11 Ed.), page 220; 7 Corpus Juris, page 108; Miller v. Barto, 247 Ill. 104.

REYNOLDS, P. J.—This action, commenced by plaintiff below, now respondent as well as plaintiff in error, counts on a promissory note dated at St. Louis, February 1, 1910, for $2991.18, the note signed by appellant and defendant in error, the amount payable after date on demand with interest to be compounded annually. Judgment is asked for the amount of the note and interest.

The answer, admitting the execution and delivery of the note, after denying any indebtedness thereon, by way of defense states that in the years 1907 and 1908 and prior thereto, defendant was engaged in the mercantile business as a retail dealer in general merchandise in Ozark, Arkansas; that in those years he became heavily involved financially and failed in business, and was indebted to many different creditors in various amounts aggregating in all several thousand dollars; that plaintiff was one of these creditors and that defendant at that time owed plaintiff $7623.34;

that when defendant became so involved financially, at the suggestion of plaintiff, a compromise or composition was entered into by defendant with his creditors, whereby the latter agreed to accept in settlement and payment of their respective claims the sum of fifty cents on the dollar thereon; that plaintiff urged the execution of this compromise agreement upon, and caused it to be presented to defendant's creditors for their approval and execution, and that it was signed and executed by plaintiff and the defendant's creditors upon the request of plaintiff, and the compromise or composition carried out and the sum of fifty cents on the dollar of the respective claims paid by defendant to his creditors under this agreement; that at the time of the execution of the composition agreement by the defendant's creditors and at the time it was carried out and fifty cents on the dollar paid to the creditors, plaintiff urged and insisted secretly that defendant pay plaintiff the full amount of its claim but concealed such demand from the other creditors of defendant and pretended to the other creditors that it was to receive payment of its claim at the rate of fifty cents on the dollar, the same as was to be received by defendant's other creditors; that by reason of and in pursuance of these demands of plaintiff that defendant pay it the full amount of its claim, defendant did pay to plaintiff on its claim fifty cents on the dollar as provided by the composition agreement, and in addition thereto the sum of $1181.16 and executed the note herein sued upon for the amount of $2991.18 for the balance of plaintiff's claim, with interest thereon, and delivered it to plaintiff; that this note now sued upon was given to plaintiff by reason of these secret and fraudulent demands made by plaintiff and in fraud of the other creditors and of defendant and is null and void. Wherefore defendant demands that he be dismissed with his costs.

By way of a counterclaim, defendant, repeating the averments in his answer, alleges that by reason of plaintiff's secret and fraudulent demands that he do so, he had paid plaintiff the sum of $1181.16 in

cash over and above the fifty cents on the dollar, as provided by the composition agreement, and had executed the note in suit for the balance of plaintiff's claim by reason of plaintiff's secret, unreasonable and fraudulent demand, as before set out, and he avers that by reason of the premises he (defendant) is entitled to judgment against plaintiff for the sum of $1181.16, so paid to plaintiff, for which, with costs, he prays judgment.

The plaintiff replied to the answer by a general denial and after a general denial of the averments of the counterclaim it is set up that on September 21, 1909, defendant filed a petition in bankruptcy and received his discharge in bankruptcy on January 18, 1910, after the alleged transactions in the defendant's counterclaim; that the amount alleged in defendant's counterclaim to have been paid by him to plaintiff was not scheduled among his assets or filed by the defendant in the bankruptcy proceedings, and that any right, title or interest that defendant may have had in and to the amount alleged in the counterclaim has been divested by the bankruptcy proceedings, and that defendant is thereby estopped to set up any claim thereto.

What is called a replication was filed to this answer to the counterclaim, denying the averments of it.

The cause was submitted to the court, a jury being waived, and after being taken under advisement the court found for defendant on plaintiff's cause of action and for plaintiff on defendant's counterclaim, rendering judgment accordingly. On the same day upon which the court rendered its finding and judgment, the court, at the request of counsel for defendant, filed instructions or declarations of law, two of which were given and one refused. The first of those given was to the effect that if the note sued on was given under the circumstances set out in the answer, plaintiff could not recover. The one marked third asked and given was to the effect that if the court, sitting as a jury, found from the evidence that a few of the credi-

tors of the defendant did not sign the agreement referred to, to accept fifty cents on the dollar for their respective claims, yet if the court further believed from the evidence that plaintiff waived the signatures of such creditors by asking that the terms of the agreement be carried out without other signatures, plaintiff cannot now be heard to complain of the failure of such creditors to sign the contract.

We will notice the second declaration asked and which was refused when we hereafter treat of the counterclaim, as it was pertinent to that alone.

Following the decision of the court, plaintiff moved for a new trial on the finding of the court against it on its cause of action, which motion was overruled, and plaintiff, excepting, sued out its writ of error.

The defendant also filed a motion for a new trial on the finding against him on his counterclaim, which motion was overruled, defendant excepting, thereupon appealing to our court.

Counsel for the respective parties raise many points and have favored us with very elaborate arguments, these arguments accompanied by the citation of numerous authorities. In our view of the case it lies within a very narrow compass.

Considering the position of plaintiff as plaintiff in error and covering the action of the court in finding against it and for the defendant on the note sued on, we think that the action of the trial court in so finding was sustained by the facts and by authority.

In 5 Ruling Case Law, p. 874, section 7, it is stated:

"The weight of authority is clear that a creditor not guilty of fraud may recover on the original claim and ignore a general composition where another creditor has secretly obtained an undue advantage and a fraudulent preference in the composition."

We have no such situation here. After stating the rule as above, that authority proceeds:

"But a creditor guilty of a fraud on the other creditors in obtaining a secret preference cannot recover on a note or other contract for the balance of

his original claim remaining after receiving payment under the composition.''

The note at page 38, 27 L. R. A. (1895), to Hanover National Bank v. Blake, 143 N. Y. 404, is cited for this, and a reference to that shows abundant authority in support of the text. To the same effect see 8 Cyc., commencing with paragraph B, páge 468, as also 12 Corpus Juris, pp. 289 and 390, section 89, subdivision e.

There was ample evidence in this case warranting the trial court in arriving at its conclusion that this plaintiff had been guilty of fraud on the other creditors in exacting a note from the defendant for the balance unpaid on its claim, the plaintiff having been an active agent in procuring the signatures of other creditors to the composition and in obtaining releases at the rate of fifty cents on the dollar from a few creditors outside of those signing. In considering the matter of the counter claim, we will go into the facts somewhat more at length and refer to what we there say as to them. It is sufficient to say here that there is evidence to the effect that plaintiff executed the note for which this is a substitute as a condition of signing the so-called composition and concealed that from the other signing creditors, whose signatures it procured.

But it is said that the note sued on is not the note which was given at the time the composition agreement was entered into but was a new note given for the difference unpaid on the old account, after the composition agreement had been fully executed and after defendant had been discharged in bankruptcy, it being claimed that a moral obligation to pay the debt, although discharged from its payment, was a good and sufficient consideration. It is true that if a party who has gone into a composition with his creditors, or who has been discharged in bankruptcy, afterwards voluntarily promises his debtor to pay the unpaid part of the original debt, that the moral obligation is a good and valuable consideration for the note or for a promise to pay. Without going out-

side of our State for authorities, it is sufficient to refer to the decisions of our court in Fleming v. Lullman, 11 Mo. App. 104; Reith v. Lullman, Ibid. 254; Farmers & Merchants Bank of Vandalia v. Richards, 119 Mo. App. 18, 95 S. W. 290. The two former cases are cited in the latter, in which it is held that the discharge of a debtor in bankruptcy releases the debtor from his legal obligation to pay, but the moral obligation to pay remains and furnishes a sufficient consideration in law for a new promise to pay, and the debtor is bound by a new promise to pay, made unconditionally, without other consideration. In all those cases it appeared that the new promise had been made after the discharge in bankruptcy and without any prior or secret agreement to pay. But in the case at bar, while the note sued on purports to be a new contract, in point of fact it is but a substitute for the original note; which was given for the portion of plaintiff's claim against defendant remaining unpaid when plaintiff signed the composition agreement. That note originally given, undoubtedly, as the authorities to which we have referred above show, was void. That first note was held by plaintiff in this case until defendant instituted proceedings to have himself adjudicated a bankrupt and either at his own suggestion, or at the suggestion of plaintiff, and on this there is a difference in the testimony, that note was cancelled and destroyed. After the discharge of defendant in bankruptcy he gave this present note. The consideration for this new note could not be, was not other than for the first, and if the first was void for the reasons we have stated, so was the one now in suit. It is true that defendant, when he gave this present note was not under any coercion; in point of fact, he was not in St. Louis, where plaintiff resided and had its place of business, at the time he signed it, but was in Arkansas and in the employ of another concern. This note in suit was sent to him by mail; he retained it for about two months and then returned it to plaintiff, signed by himself.

But after all, this was a mere substitute for the first note, and left the present note dependant for any consideration whatever, morally or otherwise, upon the first note given and which had been surrendered or destroyed. Under these circumstances we conclude that the note now in suit rests on no obligation of any kind, moral or otherwise, and is not enforceable in the hands of plaintiff.

Learned counsel for plaintiff, however, claims that as many of the creditors of defendant, who were such at the time this composition was entered into, had not signed it, it was of no effect and never became of legal force, and so complain of the declaration numbered third. The answer to this is, that this plaintiff is in no position to make any such claim here. It was the procuring cause of the signatures to the proposed composition by all the creditors who signed it and who accepted fifty cents on the dollar on their claims, or who, without signing, accepted the composition; and plaintiff distinctly represented to all these that practically all the defendant's creditors, whose signatures were important, had signed or agreed to the composition. Learned counsel for plaintiff argues that other creditors who were paid not having in fact signed the composition, their acceptance of the fifty cents on the dollar on their claims, is of no effect. That may be, but that did not make it void, but voidable only, as see Crowder v. Allen-West Commission Co., 129 C. C. A. Reps. 521, 1. c. 525. Undoubtedly, the learned trial judge found that it does not lie in the mouth of plaintiff to urge either of these defenses, plaintiff having been active in procuring releases from a large number of the creditors. So it is said in 12 Corpus Juris, p. 292, sec. 94, citing many authorities to that effect. Even conceding that a number of creditors, who were holding among them large claims, did not sign, still plaintiff held out to those signing that the composition had been perfected, and on this, induced them to enter with it and accept the fifty per cent agreed upon.

We hold that the action of the trial court, under the evidence in the case and under the law applicable

to it, was correct in holding that the plaintiff could not recover on its cause of action.

That brings us to the consideration of the claim of appellant and defendant in error to the action of the trial court in finding against him on his counterclaim.

The facts peculiarly applicable to that transaction are these:

Along in the early part of March, 1908, it appears that defendant, who was engaged in the mercantile business at Ozark, Arkansas, became embarrassed financially and that the Ferguson-McKinney Dry Goods Company, learning of that, its secretary Mr. Bogy, requested defendant to meet him at Fort Smith, Arkansas. Defendant at that time, admittedly, was indebted to plaintiff on general account for merchandise sold and delivered, in the sum of $7623.34. Accordingly Mr. Bogy went to Fort Smith, arriving there on March 22, 1908, that being Sunday. He there met defendant, who was accompanied by a Mr. Turner, who at that time was the cashier of the Peoples Bank of Ozark, Arkansas. Apparently for the first time Mr. Bogy, representing plaintiff, was then made aware of the bank's claim, which amounted in round numbers to something over $20,000. After some discussion between the parties, that is Turner, Beuckman and Bogy, a lawyer of Fort Smith, referred to in the testimony as Judge Reed, was called in for consultation over the situation. Whether Bogy or Beuckman or Turner called this gentleman in, does not clearly appear. At any rate, as the result of the conference between all four, it was arranged that all the effects of defendant should be sold out and the proceeds turned over to the Peoples Bank, out of which the bank was to pay such creditors as would accept the composition and retain whatever balance might remain in payment of the amount due it, as far as it would go. How much the property sold for brought is not very clear. The cashier of the bank said it brought about $17,740.44. It appears that on September 21, 1909, Beuckman instituted proceedings in bankruptcy, which resulted in his discharge January

18, 1910. In Schedule "B," filed by Beuckman with his petition, and to which schedule he made oath on September 21, 1909, under the heading, "Property Heretofore Conveyed for Benefit of Creditors," it is set out that, "a stock of merchandise amounting to about $24,800," (so it appears in the schedule) "was on or about the 26th of March, 1908, turned over to Peoples Bank, Ozark, Ark., for benefit of my creditors; also horse and buggy, wagon, two mules, stock in Ozark Light Company, and about $5000 R. R. ties; 12 shares stock in Telephone Company of Ozark. All books and papers turned over to said bank, $21,200." So that whether the claim of the Peoples Bank was about $20,000, or about $17,000, is not clear.

The oral testimony in the case does not specifically give the date at which this sale was made. It does appear, however, from the testimony that this sale was arranged for on this 22nd of March, 1908, in the interview between Beuckman, Turner and Bogy, and apparently under the advice of Judge Reed. It furthermore appears by the oral testimony of defendant and of Mr. Turner, that in point of fact the sale of the merchandise, etc., was made, not to the bank, but to a firm called Conatser, Hill Company, composed of M. B. Conatser and a Mr. Hill and a Mr. Tolleson, Conatser at that time being the president of the Peoples Bank, and the proceeds of the sale turned over to the Peoples Bank. According to the testimony of Mr. Bogy and of Mr. Turner it was then known that not only did Beuckman have St. Louis creditors, who were listed, but also creditors in other places, and that he owed the Peoples Bank a large sum. At that meeting at Fort Smith on March 22, 1908, according to the testimony of defendant, Mr. Bogy had first insisted that his firm should be paid, after first trying to have the whole amount paid, seventy cents on the dollar. When Bogy found he could not get that he finally wanted 60 per cent, and when he could not get that, "Finally," (as the defendant testified) "we agreed at fifty-five cents. I objected to that but I couldn't do anything better." Mr. Bogy insisted on this extra five

cents for his firm because, according to Beuckman, Bogy said, ''He had taken a lot of trouble and so forth and so on and he thought he was entitled to more than anybody else.'' According to Mr. Bogy, and in this he is not contradicted by anybody, he (Bogy) induced the cashier of the Peoples Bank to agree to pay the creditors a certain percentage on the dollar and take over the assets. The cashier of the bank testified that he, for his bank, finally consented to advance money enough to pay the creditors fifty cents on the dollar and to give the Ferguson-McKinney Dry Goods Company 5 per cent extra to pay Bogy's expenses and the attorney's fee, provided he (Bogy) could get the creditors to accept this settlement, which Bogy undertook to do. That is also Mr. Bogy's testimony as to the transaction and it is not denied by any other witness specifically. Mr. Bogy testified that he paid Judge Reed $200 for his services as attorney in arranging the matter, which was included in this extra 5 per cent. With this arrangement made between the parties Mr. Bogy returned to St. Louis, apparently the evening of that same day, and the next day, March 23rd, at St. Louis, drew up what is relied upon as the composition agreement in this case, by which those signing agreed to accept fifty cents on the dollar of their respective accounts, to be paid in cash by the Peoples Bank of Ozark as payment in full of all demands against said George O. Beuckman, it being stipulated that the agreement was not to be binding unless all the creditors agreed to accept.

Creditors, whose account aggregated about $10,-095.04, the plaintiff signing through Bogy for $7623.34, signed this and all were paid 50 per cent on their accounts, the payments made through drafts on Beuckman, through the Peoples Bank of Ozark, or through drafts on the bank, the Ferguson-McKinney Dry Goods Company, however, receiving not only 50 per cent on the $7623.34 of its account but also an additional 5 per cent, amounting to $381.16, a total of $4192.83.

Plaintiff drew a sight draft on defendant, of date March 25, 1908, payable to the order of the Peoples

Bank for collection. This draft is not marked as having been paid, but under the same date it appears that plaintiff made out its account against Beuckman, showing $7623.34 as due, and attached to the account was this: "Received of Peoples Bank, Ozark, Ark., four thousand one hundred ninety-two & 83-100 ($4192.83) as payment in full of above account."

According to the testimony of defendant, his indebtedness to the Peoples Bank at that time was about $20,000, in round numbers, and he testified that using the proceeds of the sale of his stock for the settlement with creditors and the Peoples Bank, that bank received about fifty cents on the dollar on its claim. That statement is hardly consistent with other testimony in the case, particularly in connection with that furnished by the schedule filed by defendant in his bankruptcy proceeding, and the testimony of the cashier of the bank. It would seem from an examination of this testimony that the signing creditors, including plaintiff, if paid at the rate of fifty cents on the dollar, should have received something over $5000, which would leave about $12,700 for the bank to apply on its claim of something over $20,000. Even with this claimed excess payment of 5 per cent., amounting to $381.16, and which included the $200 paid the attorney, and leaving $181.16 to apply to the travelling and other expenses of Mr. Bogy, it would seem that the Peoples Bank realized considerably more than 50 cents on the dollar of its own claim. However that may have been, it is very clear that the money which paid the extra five per cent was the money of the Peoples Bank and not the money of the defendant. By turning over the proceeds of the sale of his stock to the bank in the manner in which that was done, the defendant lost all interest in it, beyond the right to have the bank account to him for its proper distribution. It follows therefore that in so far as this $381.16, which forms part of the $1181.16 demanded in the counterclaim, defendant certainly cannot recover.

The remainder of that counterclaim is based on the payment of $828.45 made on the account on April 14, 1908.

Reverting back to the transaction between the parties which took place at Fort Smith on March 22, 1908, we have seen that according to the testimony of defendant and after it had been agreed to give plaintiff fifty-five cents on the dollar, as before stated, Mr. Bogy insisted that defendant should give his note for whatever balance there might be over and above what he then paid. Without interest that would require a note in the sum of about $3431. Bogy asked him, according to defendant, if he could not pay all of plaintiff's account in full and give them what he could when he sold his house. Defendant apparently assented to this, but it does not appear that any note was then given. Defendant apparently then returned to his home and it appearing that his wife, Mrs. Ebba L. Beuckman, who was the owner of the house in which they lived, also situated in Arkansas, sold this house—for how much does not appear. It does appear. however, that as either in full or as part of this transaction the purchaser, one Howard, gave a draft or check on the Peoples Bank of Ozark, Arkansas, payable to the order of Mrs. Ebba L. Beuckman for $1432. The abstract does not give the date of this draft or check, but it is indorsed by the Central National Bank of St. Louis, April 9, 1908. With this draft in his possession, indorsed in blank by Mrs. Ebba L. Beuckman, the defendant came to St. Louis, went to the business house of plaintiff, with whom it seems he was then employed, and handed this check so indorsed in blank by his wife to Mr. Ferguson, the president of the plaintiff company. He asked Mr. Ferguson if it was necessary for him (Beuckman) to indorse it. Mr. Ferguson told him it was not necessary, that they would have Mr. Baggott, who was an employee of plaintiff, attend to its collection. He thereupon called Mr. Baggott in and handed this draft to him and told him to take it and have it cashed. Mr. Baggot apparently did this at the Central National Bank of St. Louis, writing over the signature of Mrs. Beuckman the words, "Pay to the order of A. F. Baggott," and then indorsing the draft in his own name.

It was indorsed as paid by the Peoples Bank, April 11, 1908. So it is pretty clear that Beuckman turned this check or draft over to plaintiff about April 9, 1908. Defendant testifies that a few days afterwards and after the plaintiff had found that the check was good and had cashed it, as he supposed, Mr. Ferguson called him into the office, Mr. Bogy then being present but not having been present when Beuckman handed the draft over to Ferguson in the first instance, whereupon the defendant appears to have signed a note for about $2800, according to plaintiff's account of date December 5, 1912, for $2802.06, the note dated April 15, 1908. Deducting from what he then owed plaintiff the difference between the original amount and the amount which defendant then paid plaintiff out of the draft, which ought to have been $832, but as shown by plaintiff's account of date December 5, 1912, was $828.45, Mr. Ferguson or Mr. Bogy handed over to the defendant about $600 out of the $1432 realized on the draft, crediting defendant with the difference. It is for about this amount that the remainder of the counterclaim is made up.

We think that under the facts in the case, this must be considered as a voluntary payment and cannot be recovered, even conceding but not deciding, that this draft then belonged to defendant. It is claimed as to that by the learned counsel for plaintiff below that as that draft was the property of the wife, under our statute, it could only become the property of defendant by his wife's express direction in writing authorizing him to take it into his possession. Authorities are cited to the effect that the mere blank indorsement by the wife is not sufficient to vest title in the husband. That point, however, we need not and do not decide. We proceed on the assumption that the draft belonged to defendant and that out of it he paid this $828.45 or $832 on his account. It will be observed that this occurred about the 9th of April, sometime after the so-called composition arrangement of March 23, 1908, had been executed, and as far as the evidence tends to show after all the parties signing

it had been paid their 50 per cent, or the amount that they had received,and had executed releases for any balance. Their releases are dated March 25th, others March 26th, some March 30, 1908, none, as we recall, later. There is no evidence of any compulsion, fraud or duress practiced upon defendant in having him pay over this $832.

In the very lucid opinion of Circuit Judge SANBORN speaking for the United States Circuit Court of Appeals of this Judicial Circuit, in Crowder v. Allen-West Commission Co., supra, that learned judge, at page 525 has very concisely stated the rule which we think here applicable: "The debtor may recover back the excess which he has paid to the preferred creditor above the fixed percentage before the composition was made, and the excess he has been compelled to pay thereafter. But he may not recover anything which he has voluntarily paid after the composition was made pursuant to his agreement with the preferred creditor."

In that it ignored the question of lack of coercion under whch defendant paid over the money sought to be recovered by the counterclaim, and in fact, while purporting to cover the facts necessary to a recovery on the counterclaim, the learned trial judge committed no error in refusing the second declaration of law asked by defendant and purporting to cover the counterclaim.

Our conclusion on this counterclaim is, that the action of the learned trial judge in declining to allow it in favor of defendant is supported by substantial evidence and is warranted by the law under the facts in the case. In the view we take of the case we do not think it necessary to pass on the point made by counsel for plaintiff, that in failing to include the claim now made for the amount covered by the counterclaim in his schedule of assets filed in the bankruptcy proceedings, defendant cannot now assert it.

Upon the whole case we hold that the judgment, in so far as it finds for defendant on plaintiff's cause of action is correct and should be affirmed, and that

State ex rel. v. Boepple and Crawford.

the judgment on the counterclaim against the defendant and in favor of plaintiff is also correct and should be affirmed.

It is accordingly so adjudged, further adjudging that the costs of the appeal be taxed equally against the respective parties. *Allen* and *Becker, JJ.,* concur.